**Eleanor S. PEETS et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 337–57–TC.**

United States District Court
S. D. California.

Sept. 18, 1958.

Daniel Cathcart, Magana & Olney, Los Angeles, Cal., for plaintiffs.

Laughlin E. Waters, U. S. Atty., Jack Wilson, Asst. U. S. Atty., and Fulton Haight, Moss, Lyon & Dunn, Los Angeles, Cal., for defendant.

HOLTZOFF, District Judge (Sitting by designation).

This is an action by a husband and wife against the United States to recover damages for personal injuries sustained by the wife, the suit being brought under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671–2680. The plaintiffs were visiting their son at Fort Ord, California, the son being stationed there while in the military service. The plaintiffs had dinner at the Post Exchange Cafeteria, and while leaving the building the female plaintiff stepped off a ramp leading from the exit door to the sidewalk, fell and was injured.

The evidence discloses the following facts. As stated, the plaintiffs' son was in the military service and was stationed at Fort Ord. On certain days the military authorities encouraged servicemen on duty at that Army post to invite members of their families and friends to visit them. On March 16, 1956, in accordance with such an invitation, the plaintiffs visited their son. They were accompanied by their daughter and another young lady who was a friend of the son. After arriving at Fort Ord in the early evening and registering at a guest house, as was the usual practice, they went to have dinner at the Post Exchange Cafeteria, which was open to civilians. At that time it was already dark.

After finishing dinner this family group proceeded to leave. They saw a sign, "Exit", pointing to a door leading outside, and went out through that door. The door opened onto a ramp that was hardly wider than the doorway. The doorway itself was 36 inches wide, while the ramp was 48 inches wide. In other words the ramp was only six inches wider than the doorway on each side. The ramp was 13 feet long and led down to a sidewalk. It started at a height of 26 inches above the ground at the doorway, and tapered down to a height of 7½ inches at the point where it reached the sidewalk. There were no handrails on either side of the ramp.

As this family group went out of the door and stepped on the ramp, the two young ladies led the way. The female plaintiff followed and her husband brought up the rear. After the female plaintiff took a couple of steps on the ramp, she encountered three other persons walking up the ramp in the opposite direction. She started to step aside to let them pass, and as she did so, her right foot dangled off the ramp and she fell to the ground, sustaining certain injuries, to which reference will be made hereafter.

It is claimed that the defendant was guilty of negligence in that the ramp as constructed, and being without handrails, was a hazardous and dangerous structure. The court so finds as a fact.

There was no evidence introduced by either side as to whether this ramp was of a usual or an exceptional type of construction. The Government offered no evidence tending to explain why a ramp was used instead of constructing a few steps leading down to a level walk. Neither did the Government tender any explanation for the absence of handrails or any other safety devices.

It is true that perhaps on military posts certain installations might not be deemed dangerous or hazardous for military personnel that might be considered such for ordinary members of the public. This building, however, is obviously of a different character than structures intended solely for the use of soldiers. It was a Post Exchange Cafeteria that was open to civilians. Moreover, relatives and friends of military personnel stationed at the fort were invited to visit the Post, and among other things to utilize the facilities of the cafeteria. Therefore, the obligation of the defendant to maintain a safe structure should be weighed from the standpoint of the general public, rather than from the viewpoint solely of military personnel.

The court finds as a fact that this structure was hazardous and dangerous because of lack of handrails. In addition, it appears that inside the building in the cafeteria, there was a sign, "Exit", pointing toward this door. Apparently persons in the cafeteria were invited and expected to use this door for the purpose of egress. Since the exit led to a narrow ramp without handrails, it was obviously dangerous to permit persons to walk on the ramp in both directions. It would have been a reasonable precaution to place a sign outdoors to the effect that this opening in the building was to be used solely as an exit and was not to be employed also as an entrance. If this had been done, the plaintiff would not have encountered persons walking up the ramp, because there would have been no reason for anyone to do so if the door could not be used as a means of entrance. For both of these reasons the court finds that the defendant was guilty of negligence.

There is still another important fact that has a significant bearing upon the issues of this case. Immediately outside of the door and above the ramp there was an electric light fixture. Both plaintiffs, their daughter, and the other young lady accompanying them, testified that the lamp in that light fixture was not burning at the time of the accident. These witnesses also stated that when they first arrived at the cafeteria they passed by this door in order to reach the main entrance, and did not see any light burning. To be sure, this evidence comes from interested witnesses. Moreover, it is negative testimony. Nevertheless, it is in no wise contradicted.

The acting manager of the cafeteria was called as a witness by the Government and testified that she had been inside the cafeteria and was notified that an accident had taken place. She later went out and found out that the light was burning. However, the accident, according to the pretrial order, took place at 7:40 P.M., and this witness testified that she saw a light some time between 9:00 and 9:30 P.M. In other words, an hour and a half elapsed between the moment of the accident and the time when the acting manager of the cafeteria saw this outside light burning. Any number of things might have happened during the interim.

There was also testimony to the effect that the bus boys working in the cafeteria were charged with the duty of turning on all lights at the proper time. It appeared, however, that there were three bus boys and not one of them was specially charged with this obligation, and there was no evidence as to whether any one of them had performed this function on the evening of the accident. There is, of course, a possible inference that the light might have been originally turned on, that it might have burned out, and that later another lamp had been inserted in the fixture, and that this was the reason why the light was not operating at the time of the accident and yet was in full operation an hour and a half later.

■■ It is the function of the court, as the trier of the facts, to determine what inference to draw from the evidence, as was held by the Supreme Court in the case of Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916. On the basis of all of the testimony the court finds that the light was not operating at the time of the accident, and had not been lighted that evening prior to the accident. Failure to light this lamp is obviously negligence chargeable against the defendant, and the court so finds.

The court also finds as a fact that the negligence in each of the three aspects referred to heretofore was a proximate cause of the plaintiff's injuries. The court might add that even if the evidence did not sustain the inference that the lamps had not been lighted that evening, the court would still find that the other aspects of negligence, that is, failure to construct guard rails on the ramp, as well as failure to make the ramp a one-way route, would be sufficient to justify the finding that the defendant was negligent and that its negligence was the proximate cause of the accident. In fact, the principal negligence with which the defendant is to be charged is failure to maintain guard rails on the ramp. This circumstance alone was sufficient to constitute the proximate cause of the plaintiff's injuries.

■■ This brings us to a consideration of the principles of law that must govern the disposition of the issue of negligence. It is a general rule of the common law that a person who maintains a structure to which the public is invited is under an obligation to keep it in a reasonably safe condition. In this instance it is conceded that the plaintiffs were invitees. To be sure, a person who operates a building to which the public is invited is not an insurer or a guarantor of the safety of every person who takes advantage of the implied invitation. On the other hand, he owes a duty to use reasonable care for the safety of those who respond to the invitation. As heretofore indicated in this instance, reasonable care was not used, and failure to use it constitutes negligence for which the defendant is liable.

This doctrine has been adopted and applied in California. The basic general principle is found in the West's Ann. California Civil Code, Section 1714, which reads as follows:

"Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself."

■ It hardly needs to be observed that since this accident occurred in California, the provisions of the Federal Tort Claims Act rendered the substantive law of California applicable in this case.

The California courts have applied this general rule in similar situations. A case that is parallel to the case at bar, not only as to the principles of law involved, but also as to the factual problem presented, is a decision of the Supreme Court of California in banc in Johnston v. De La Guerra Properties, 28 Cal.2d 394, 170 P.2d 5, 7. In that case there was a concrete ramp, as there was in the instant case, about three feet wide, leading from a parking area to a private walk that served as an entrance to the defendant's restaurant. There were no guard rails on the ramp. The plaintiff was walking down the ramp, and practically stepped into space and fell and sustained injuries. The Supreme Court of California held that defendant was guilty of negligence in two respects and, therefore, was liable for damages. First, the court found that the general area was unlighted; and, second, the court said:

"There were no guard rails or other protective devices along the walk which might have served to prevent the happening of the acci-

dent which occurred when plaintiff fell from the wall onto the private walk."

What appears to be one of the latest decisions of the California courts applying the principles governing the case at bar is a decision of one of the State District Courts of Appeal in Woodard v. Bank of America National Tr. & Sav. Ass'n, 130 Cal.App.2d 849, 279 P.2d 1018, decided in February, 1955. In that case the plaintiff stumbled over a concrete curbing that divided a parking lot from the adjacent sidewalk. He testified that he had not seen the curbing. The court held that in the light of the specific circumstances plaintiff was an invitee, that it was incumbent upon the defendant to maintain the premises in a reasonably safe condition for use by invitees, and that the curb as constructed and maintained constituted a hazard to them.

■ There is still another issue to be determined before arriving at a conclusion whether the plaintiffs are entitled to recover, and that is whether the female plaintiff was guilty of contributory negligence. The court finds as a fact that she was not guilty of contributory negligence. She testified that when she walked out of the door onto the ramp she did not realize and could not see that there were no guard rails. If, as the court has found, it was dark, her testimony that she was unable to observe the absence of guard rails is entirely reasonable. Her attempt to move aside to let passers-by go past her is almost a reflex action that cannot be considered contributory negligence on her part. Something that a person does instantaneously, and that is a reasonable action on the spur of a moment, can hardly be deemed to be an act of contributory negligence.

The case of Woodard v. Bank of America National Trust & Savings Ass'n, to which reference has already been made, is illuminating. There the plaintiff stumbled over a curbing, which he testified he had not seen. No doubt if he had slowly felt his way and used every possible caution, he would have perceived the curbing, but the court held that there was no such extreme obligation on the part of a pedestrian and sustained a finding of fact by the trial court to the effect that there was no contributory negligence.

In the light of the foregoing discussion, the court reaches the conclusions of law that the defendant was guilty of negligence, that the plaintiff's injuries were proximately caused by the defendant's negligence, that the female plaintiff was not guilty of any contributory negligence, and that, therefore, the plaintiffs are entitled to recover.

■ This brings the court to a consideration of the amount of damages. The female plaintiff, as a result of the fall from the ramp, sustained a comminuted fracture of one of the two bones in the right forearm known as the ulna. The fracture occurred close to the elbow joint. In addition, she suffered a temporary injury to her right hand. She was taken to a hospital after receiving first aid at Fort Ord. She was in the hospital for eight days. Her right arm was placed in a cast, which she wore until June 9, 1956—a period of almost three months from the date of the accident. After the cast was removed, she received a series of diathermy and other similar treatments. Necessarily, she suffered considerable pain in connection with the injury.

Her medical expert testified without any attempt at contradiction that although the fracture has completely healed, she has a permanent injury in her right arm in that she has lost a certain percentage of mobility in various directions; among them ability to straighten out her arm entirely, or to turn her palm completely. Her physician further stated that in his opinion this result is permanent and affects her daily activities, and that while it might possibly be corrected by an operation, the result of such an operation would be questionable and problematical.

She testified that as a result of the injury, she is unable to do all of the

housework that she had carried on previously, was no longer able to play the piano as easily as she had regularly done theretofore, and was no longer able to use a typewriter with facility. To be sure, she was not employed at the time of the accident and had not been employed for a period of over 20 years. Nevertheless, inability to resume secretarial work, which she had done during an earlier period in her life, is at least a potential effect that might have serious consequences, because one never knows how circumstances might turn and make it necessary or at least desirable for a person who has not been employed for a long time to accept employment again.

In the light of all these circumstances, the court finds that the female plaintiff sustained general damages in the sum of $8,000. Special damages comprising hospital and medical expenses amount to $668.47. Accordingly, judgment will be rendered in favor of the plaintiff Eleanor Peets for the sum of $8,000, and in favor of the plaintiff Clinton Peets in the sum of $668.47.

A transcript of this oral decision will constitute the findings of fact and conclusions of law.